Charles SVESTKA *v.* FIRST NATIONAL
BANK IN STUTTGART

80-41                                          602 S.W. 2d 604

Supreme Court of Arkansas
Opinion delivered June 16, 1980
Rehearing denied August 25, 1980

238

*Faber D. Jenkins*, for appellant.

*Carl J. Madsen* and *Thweatt & Bayne*, by: *James M. Thweatt*, for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant Charles Svestka was an accommodation maker on a note for $30,000 lent by appellee First National Bank in Stuttgart to Joseph Griffin to purchase a 1966 Gruman AG-Cat airplane. Joseph Griffin executed a security agreement giving the bank a security interest in the plane. After Griffin had failed to pay the debt on May 1, 1977, the extended due date, and had been adjudged a bankrupt, the bank obtained possession of the plane and sold it. The bank credited the proceeds of the

sale, less certain expenses incurred by it, to the debt and brought this suit against Svestka for the remaining balance. Trial by jury resulted in a verdict in favor of the bank. Appellant raises three points for reversal. Since we find merit in none of them, we affirm the judgment on the jury verdict.

Appellant first contends that the trial judge erred by failing to give the following instruction to the jury:

The plaintiff is entitled to recover as part of his damages those charges itemized as license, attorney's fee, and insurance, if the defendant agreed-to pay said charges.

The items to which appellant refers as a basis for this instruction were expenses incurred in connection with the recovery and sale of the collateral covered by the security agreement, i.e., the plane. The testimony of Robert Neukam, Assistant Vice-President of agricultural lending of appellee bank, was that the plane had been impounded by the bankruptcy court, and the bank paid $427.20 to an attorney employed by it for obtaining a release of the plane by the bankruptcy court, in order that it might be sold and the proceeds applied to the debt to the bank. He also said that the bank paid a premium of $450 for "ground coverage" insurance on the collateral. He testified that, when the bank tried to sell the plane, it was unable to do so because it could not be licensed, so the bank paid $478.64 to make it airworthy so it could be licensed. No contention is made that these disbursements were unnecessary or the amounts unreasonable. By a line of reasoning we do not comprehend, appellant contends that he was not liable for these charges because he did not sign the security agreement. The question was not one of his liability for the expenses; it was the amount of credit to be given on the note on which he was a co-maker on account of the sale of the collateral. Ark. Stat. Ann. § 85-9-504 (Supp. 1979). Ark. Stat. Ann. § 85-9-203 (Supp. 1979), with reference to attachment and enforceability of a security agreement against a debtor or a third party, which provides that the agreement is not enforceable unless signed by the debtor and the debtor has rights in the collateral, has no application. The bank was enforcing the security agreement against Griffin, not against Svestka, who was not a party to

the security agreement and had no interest in the collateral itself. The commercially reasonable and proper costs incurred in reducing the collateral to possession and holding it and preparing it for sale were proper deductions from the proceeds of sale in arriving at the credit to be given on the debt evidenced by the note. The agreement of Svestka, as accommodation maker, was not required. Ark. Stat. Ann. §§ 85-9-502 and 85-9-504 (1) (Supp. 1979).

The allowance of expenses, of preparing personalty which is collateral for sale, after default of the debtor, including the cost of repairs reasonably necessary, is not error. *Cornett* v. *White Motor Corp.*, 190 Neb. 496, 209 N.W. 2d 341 (1973). Providing insurance coverage pending the sale was certainly commercially reasonable. This insurance afforded protection, not only to the bank, but to appellant, because loss or destruction of, or damage to, the collateral, would have deprived appellant of credit for the proceeds from the collateral which he might reasonably expect. It was a proper cost of holding the plane pending its sale.

The attorney's fees allowed were not those of collecting the debt, or of conducting the sale of the collateral. Consequently, the statutory provision requiring agreement of the debtor has no application. A secured creditor is entitled to recover reasonable attorney's fees for services rendered by an attorney in obtaining possession of collateral as a cost of reducing it to possession. *A to Z Rental, Inc.* v. *Wilson*, 413 F. 2d 899 (10 Cir.), 163 U.S. P.Q. 14 (1969).

Appellant's next point for reversal is that the jury verdict is erroneous, because it disregarded the law as to application of payments as stated in an instruction. Apparently the jury was instructed on the calculation of interest where partial payments have been made as set out in Ark. Stat. Ann. § 68-606 (Repl. 1979), but the instruction is not abstracted. We have some difficulty in treating appellant's arguments because they far exceed the scope of this point as stated. The issue as to application of payments relates to a payment of $1,000 by Griffin at the time of, or shortly after, the execution of an extension agreement by the parties to the original note. Appellant argues that the application made of this payment

rendered the note usurious. He also argues that since the note thus became usurious, the trial court should have directed a verdict in his favor.

Appellant did plead, by an amended answer, his conclusion that the transaction was void for usury. The defense is an affirmative one and appellant had the burden of proving it clearly. *Hollan* v. *American Bank of Commerce & Trust Co.*, 159 Ark. 141, 252 S.W. 359. The issue must have been submitted to the jury, but the instructions on the issue are not abstracted. Appellant argues that the trial court erred in not directing a verdict for him at the close of appellee's evidence, because the proof adduced was sufficient to *allow* the court to determine that a usurious rate of interest was sought. We cannot predicate a reversal on the court's denial of this motion for three reasons. First, the motion was made at the conclusion of the plaintiff's case and not made or renewed after all the evidence had been presented. *Lytal* v. *Crank*, 240 Ark. 433, 399 S.W. 2d 670; *Campbell* v. *Bastian*, 236 Ark. 205, 365 S.W. 2d 249. Next, the motion by appellant's attorney was, "At this time I move for directed verdict on the plaintiff's case." Rule 50, Arkansas Rules of Civil Procedure, requires that one moving for a directed verdict state *specific* grounds for the motion. This requirement is particularly important in a multiple-issue case such as this.

Finally, there was an issue of fact for the jury on the question argued here by appellant. It turns upon the proper application of a payment of $1,000 by Griffin on December 7, 1976. Appellant says that it should been applied to reduce the principal amount of the debt. Appellee says that it was properly applied to interest accrued between the date of the note and the date of an extension agreement executed by the bank, Griffin and appellant on December 6, 1976. The root of the controversy is the wording of the original note. It was prepared on a printed form. It provided for annual payments on the first day of December, 1976, and the first of each December thereafter until the note was paid in full with interest at the rate of 9.5 per cent per annum from maturity on each installment. The word "maturity" was typed into a blank on the printed form, as was the interest rate. The note provided that failure to pay any payment would mature the

unpaid balance, at the option of the bank. When the payment due December 1 was not made, the extension agreement was executed. It recited that "the maturity of a certain note for $30,000.00 dated 6 May, 1976 executed by Joseph Griffin bearing interest from date until maturity at 9.5 per cent, per annum and thereafter until paid at ten per cent per annum, . . the unpaid balance of which is now $30,000, is hereby extended to 1 May 1977 with interest to such date at 9.5 per cent per annum, both principal and interest to bear interest from maturity at the rate of ten per cent per annum until paid."

Robert Neukam, the bank officer who dealt with the parties on this loan, testified that the bank made the loan to Griffin at the request of Svestka and upon Svestka's financial strength. He said that an error was made in the preparation of the note in inserting the word "maturity" instead of the word "date" following the interest rate; that it was understood that interest began to run from the day the note was made; that when this error was brought to the attention of the parties at the time of the execution of the extension agreement, it was agreed that interest would be paid up to date, or as nearly so as the makers "could get together;" and that everyone was aware of the mistake and agreed that interest should be paid as originally intended. Neukam stated that, prior to the making of the extension agreement, he had told Griffin and Svestka interest would have to be brought up to date or the bank would not extend the note. According to Neukam this requirement is standard operating procedure with appellee. The quoted language of the extension agreement is corroborative of Neukam's testimony and the jury obviously found it credible. The extension agreement itself rendered information of the note unnecessary under the circumstances related by Neukam.

Neukam testified that when Griffin paid $1,000, the payment was applied to interest which had accrued up until September 11, 1976, and that he had made a notation on the back of the note that interest was paid up to that date. He would not admit that the $1,000 payment should have been applied to reduce the principal of the note to $29,000.

Appellant concedes that the note and extension agreement, both of which were exhibits to the bank's complaint, are not usurious upon their face, but asserts that the complaint is. In the first place, the allegations of the complaint, even though not controlled by the exhibits upon which the suit was brought, were completed and explained by them. *Arkansas Power & Light Co.* v. *Kerr*, 204 Ark. 238, 161 S.W. 2d 403. In the next place, Neukam testified the balance alleged to be due in the complaint was based upon a calculation of interest, according to an amortization schedule based upon a 360-day year, then used by all banks, but that he had recalculated the amount upon the basis of a 365-day year, to which the bank had changed. The mere fact that suit was brought for an excessive amount does not transform the transaction into a usurious one. *Guaranty Financial Corp.* v. *Harden*, 242 Ark. 779, 416 S.W. 2d 287; *Mid-State Homes, Inc.* v. *Knight*, 237 Ark. 802, 376 S.W. 2d 556; *Sager* v. *American Investment Co.*, 170 Ark. 568, 280 S.W. 654. Neukam testified that, when calculated on the basis of a 365-day year, interest accrued and unpaid on the date of sale of the collateral, December 29, 1977, amounted to $3,693,29 instead of $3,-716.71, as he had calculated it originally. Appellant has failed to demonstrate that, as a matter of law, the transaction was tainted with usury. All his calculations ignore interest which would have accrued between September 11, 1976, and December 1, 1977, which, according to the extension agreement, would have also borne interest at the rate of 10 per cent per annum after December 1, 1977. Appellant makes too much of a pretrial statement by appellee's attorney that "We are willing to waive the interest from May 6 until the extension agreement." That offer was made as a part of appellee's pretrial motion for judgment on the pleadings, which came to naught when appellant withdrew from a stipulation he had previousy entered into. The offer was never pursued thereafter and appellant did not think enough of it to ask that it be brought to the attention of the jury in any way.

Appellant's third point for reversal is that the trial judge erred in failing to direct a verdict in his favor at the close of appellee's case because appellee had failed to perfect a security interest in certain accounts receivable and thereby had discharged appellant from any liability on the note. The "ac-

counts receivable" were those arising from a contract between Griffin and Harold Huntsman. Here again, the motion for directed verdict was waived by appellant's failure to move for such a verdict at the conclusion of all the evidence. And again appellant failed to alert the trial judge to the basis for his motion by specifying this ground as required by Rule 50 of the Arkansas Rules of Civil Procedure.

Neukam testifed that, at the time of the extension agreement, he had been talking with Huntsman, a "large" farmer in the Bald Knob area and other places, who had told Griffin that Griffin could have all Huntsman's business n crop dusting and other such agricultural services. He said that the bank was unwilling to go along with Griffin's proposal to extend the due date of the loan to May 1, 1977, upon the strength of an assignment of the income Griffin might receive from Huntsman, because the bank did not know whether Huntsman would even be farming. Neukam stated that Huntsman's application to appellee for a sizeable crop loan had been rejected and that Huntsman's application to numerous others had also been rejected. For that reason, he felt that the bank could not then take an assignment. There was a discussion of accounts receivable from Huntsman in the presence of Svestka before the extension agreement was signed, and Neukma testifed that Griffin had said that the money he received from Huntsman would help significantly in the payment of the debt to the bank. Neukam never advised Svestka that he had not taken a security interest in the accounts receivable. According to Neukam, Svestka came to the bank and told him that he did not think Griffin was going to pay the debt, but did not say that the Huntsman farm account was being used to pay someone other than the bank. The bank had learned this by February 17, 1977, because its senior vice-president wrote a letter to Griffin, reminding him that he was to give the bank an assignment of accounts receivable from Harold Huntsman & Sons and that he had broken his agreement by giving an assignment of this income to Lonoke Production Credit Association. The bank's position, stated in this letter, was not subsequently communicated to Svestka.

Appellant's basic argument on this point is that the bank

had a duty under Ark. Stat. Ann. § 85-3-606 (1) (b) (Add. 1961) to exercise reasonable means to protect him by timely perfecting a security interest in the Huntsman account.

If Neukam's testimony is to be believed, and the jury thought that it was, the bank was not in a unique position to control disbursement of funds from the proceeds of a loan to Huntsman, as appellant urges, because it made no loan to Huntsman. The bank did not impair the collateral, because it never had it, and had, at best, only an agreement by Griffin to give this collateral. At the most, the question of discharge was one of fact for the jury and the testimony was not such as to justify a directed verdict.

The judgment is affirmed.