Deborah J. THOMAS  *v.*  Dale OLSON, Individually,
Conny Olson, Individually, and Dale Olson and Conny Olson
as Trustees of the Dale Olson and Conny Olson Family Living Trust,
U/T/D May 18, 2000

05-123                                    220 S.W.3d 627

Supreme Court of Arkansas
Opinion delivered December 15, 2005

*Phillip Jack Taylor,* for appellant.

*Gean, Gean & Gean,* by: *Roy Gean, III,* for appellees.

BETTY C. DICKEY, Justice. Appellant Deborah Thomas challenges the dismissal of her claims against appellees Dale and Conny Olson for breach of contract, deceit, constructive fraud, and violations of the Arkansas Deceptive Trade Practices Act. Ms. Thomas contends that the circuit court erred in (1) denying her motions for a directed verdict and judgment notwithstanding the verdict (JNOV) because there was no substantial evidence to show that the Olsons fully disclosed defects of their home due to movement of its foundation; (2) denying her motion for a new trial because the jury verdict was clearly against the preponderance of the evidence or was contrary to law; and (3) failing to give a proffered jury instruction for attorney's fees. We find no error and affirm.

The Olsons initially contracted to sell their Fort Smith home to the Norburys for $145,000, in September of 2000, and they provided owner financing to the Norburys. Shortly after moving in to the home, the Norburys noticed cracks in various places in the walls and floors as a result of movement in the home's foundation. They obtained two estimates for repairing the foundation, $31,000 from PowerLift, and $17,500 from Foundation Specialties for a partial fix. Instead of paying to repair the foundation, the Norburys decided to terminate the real estate contract by moving out of the home, sometime in February of 2002.

About a month later, the Olsons relisted their home with a real estate agent, Karen Samuelson. Betty Hogue, a neighbor of the Olsons and a coworker of appellant, informed Ms. Thomas of the

listing. Agent Samuelson showed the home to Ms. Thomas, who expressed interest in purchasing the home. Samuelson also gave Ms. Thomas a property disclosure on which the Olsons had checked "Yes" to questions that indicated their home had experienced settling problems, causing defects in the structure. In addition, the Olsons stated in the disclosure that there "[h]ave been some cracks in interior and exterior walls-due to foundation movement." Ms. Thomas was not informed about the previous estimates for repairing the home's foundation. Nevertheless, she was informed through her appraiser that the house was valued at $145,000. Ultimately, Ms. Thomas offered $105,000 for the home, which the Olsons accepted.

Several months after Ms. Thomas moved into the home, she noticed a large exterior crack around the fireplace. Concerned that the fireplace would soon become detached from the home, she called PowerLift for an estimate to repair the crack and learned that PowerLift had given the Olsons an estimate several months earlier. Additionally, she called Foundation Specialties, who informed her that it had also prepared an estimate for the Olsons. Ms. Thomas asked the Olsons to rescind the contract, but they refused. She eventually paid Foundation Specialties $15,360 to partially fix the foundation. Ms. Thomas subsequently sued the Olsons for breach of contract, deceit, constructive fraud, and violations of the Arkansas Deceptive Trade Practices Act.

At trial, the Olsons presented evidence that Ms. Thomas had waived her rights to any claims arising out of the real estate contract. The real estate contract contained an "as is" clause, which specifically stated that the buyer would hold the seller harmless for any structural defects discovered after closing. Agent Samuelson testified that she had gone over the entire contract with Ms. Thomas, explaining her right to have the home inspected and advising her to do so, and telling her that if she failed to inspect the home, she would waive all rights to any future repairs of the home. Despite this advice, Ms. Thomas declined to have the home inspected.

Ms. Hogue testified that she informed Ms. Thomas that the home was being sold at a reduced price because it had foundation problems. When she learned that Ms. Thomas planned to sue the Olsons over foundation problems, Ms. Hogue said that she was surprised and asked, "Debbie, why do you think you got the house for what you paid for it?" Mr. Olson testified that the main reason for the reduced price was the foundation problem. Tim Bailey, a

neighbor of the Olsons, testified that, when he challenged Mr. Olson because he thought that the $100,000 price range was "way too low," Mr. Olson said that he was reducing the price due to foundation problems.

Ms. Thomas testified that, because of her work, she only viewed the property in the evening when it was dark. She stated that she observed cracks in the exterior of the home but that it was very hard to see them because there was no light and they were located behind bushes. She admitted that she was aware that one of the reasons for the reduced price was due to settlement problems. At the close of the trial, Ms. Thomas moved for a directed verdict, which was denied. The jury returned a verdict in favor of the Olsons on all claims. Ms. Thomas then filed a motion for a new trial or for JNOV, which was also denied. Ms. Thomas now appeals the circuit court's denial of these motions.

Ms. Thomas relies on both the real estate contract and owner property disclosure to support her five theories of liability against the Olsons. Paragraph 16(C) of the real estate contract states that the "[s]eller will provide to Buyer a written Disclosure about the condition of the property which will contain information that is true and correct to the best of the Seller's knowledge." According to Ms. Thomas, the Olsons failed to disclose or fully disclose, to the best of their knowledge, known defects of the home as a result of movement in the foundation. Specifically, she maintains that had the Olsons disclosed the severity of the foundation problems, by divulging the previous estimates for repairing the foundation in the property disclosure, she would not have purchased the home.

### I. Motions for Directed Verdict and JNOV

Ms. Thomas first argues that the circuit court erred in denying her motions for directed verdict and JNOV. She contends that there was no substantial evidence to support the jury's verdict because the Olsons failed to inform her about the estimates to repair the foundation of the home, which they were contractually required to do. We decline to address the merits of the denial of both motions because the motion for a directed verdict was not supported by any specific grounds. Rule 50(a) of the Arkansas Rules of Civil Procedure requires that a party moving for a directed verdict state specific grounds in order to bring the issue to the trial court's attention. *See* Ark. R. Civ. Proc. 50(a) (Repl. 2005); *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 120 S.W.3d 61

(2003); *Yam's Inc. v. Moore*, 319 Ark. 111, 890 S.W.2d 246 (1994); *Security Pacific Housing Services, Inc. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993).

Counsel for Ms. Thomas requested a directed verdict on two occasions. First, after defense counsel's final witness had been excused, plaintiff's counsel said, "I would move for directed verdict at this time" to which the trial judge responded, "[w]e will take that up in just a second. I'm going to send the jury out." Second, after excusing the jury, the following colloquy took place between the court and plaintiff's counsel:

> THE COURT: Mr. Taylor, do you have a motion?
>
> MR. TAYLOR: Yes, your Honor, on behalf of the plaintiff we move for directed verdict at this time.
>
> THE COURT: The Court is going to deny the motion of Plaintiff for directed verdict. The Court believes this is a fact question for the jury on all counts that are raised, and for the same reasons that the Court denied the motion for directed verdict filed by the defense.

Unquestionably, neither of these requests for a directed verdict on Ms. Thomas' behalf were supported by specific grounds.

In her brief, Ms. Thomas cites to the record and states that "she made specific arguments as to the sufficiency of the proof that was made on her behalf." However, such arguments were made in response to defense counsel's request for a directed verdict on the contract claim. Again, Rule 50(a) requires the party moving for a directed verdict to state specific grounds for the motion. Therefore, a response to an opposing party's motion for a directed verdict is insufficient for purposes of satisfying Rule 50(a). Failure to comply with the requirements enumerated in Rule 50(a) is a sufficient basis for denial of a motion for directed verdict and for affirmance on appeal. *See Friddle*, 315 Ark. 178, 866 S.W.2d 375; *Svestka v. First Nat'l Bank in Stuttgart*, 269 Ark. 237, 602 S.W.2d 604 (1980). Requiring specific grounds in a motion for directed verdict is especially necessary when a case involves multiple issues, as does the instant case. *Id.* For these reasons, we conclude that this issue was not preserved for our review.

Similarly, we decline to address the merits of the denial of Ms. Thomas' motion for JNOV. We have observed that a motion for a directed verdict is a condition precedent to moving

for JNOV. *Friddle*, 315 Ark. 178, 866 S.W.2d 375; *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993); *Willson Safety Prod. v. Eschenbrenner*, 302 Ark. 228, 788 S.W.2d (1990). And, because a motion for JNOV is technically only a renewal of the motion for a directed verdict made at the close of the evidence, it cannot assert a ground not included in the motion for a directed verdict. *Friddle*, 315 Ark. 178, 866 S.W.2d 375. We have already concluded that Ms. Thomas' motion for a directed verdict was not supported by specific grounds, and, thus, the merits of the denial were not preserved for our review. It follows that Ms. Thomas' motion for JNOV, which is essentially a renewal of the motion for a directed verdict, was also not preserved for our review.

## II. Motion for New Trial

Ms. Thomas next asserts that the circuit court erred in denying her motion for a new trial. The standard of review for the denial of a motion for new trial is whether the verdict was supported by substantial evidence. *Tucker*, 353 Ark. 730, 120 S.W.3d 61; *Smith v. Hansen*, 323 Ark. 188, 914 S.W.2d 285 (1996). Substantial evidence is defined as "evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture." SEECO, *Inc. v. Hales*, 341 Ark. 673, 684, 22 S.W.3d 157, 164 (2000); *Esry v. Carden*, 328 Ark. 153, 155, 942 S.W.2d 846, 847 (1997). Additionally, in determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party receiving the judgment. *Tucker*, 353 Ark. 730, 120 S.W.3d 61; *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (1999).

This court has acknowledged that generally, a defense verdict will always be supported by substantial evidence, because the plaintiff has the burden of proof, and the jury is the sole judge of credibility of witnesses and the weight and value of the evidence. *Webb v. Bouton*, 350 Ark. 254, 85 S.W.3d 885 (2002); *Anderson v. Graham*, 332 Ark. 503, 966 S.W.2d 223 (1998); *Morton v. American Med. Int'l, Inc.*, 286 Ark. 88, 689 S.W.2d 535 (1985). In situations where the verdict is against the party who has the burden of proof and that party appeals the denial of a motion for a new trial, a literal application of the substantial evidence test would be untenable, as the defendant may have introduced little or no proof, yet the jury found against the plaintiff. *Esry v. Carden*, 328 Ark. 153, 942

S.W.2d 846 (1997); *Weber v. Bailey,* 302 Ark. 175, 787 S.W.2d 690 (1990); *Schaeffer v. McGhee,* 286 Ark. 113, 689 S.W.2d 537 (1985). Thus, it makes little sense for an appellant to insist that a reversal is required because the defendant's proof failed to meet the substantial evidence test. *Id.* In short, the plaintiff has failed to convince the jury, as fact-finder, of an essential element of proof. *Weber,* 302 Ark. 175, 787 S.W.2d 690; *Schaeffer,* 286 Ark. 113, 689 S.W.2d 537.

■ In the instant case, there is substantial evidence to support the jury's verdict. The jury could have believed that by disclosing that the home had experienced foundation problems that caused defects, the Olsons were not liable under any of the five claims against them. Furthermore, regardless of whether the jury believed that the Olsons disclosed, or fully disclosed, all that was required of them on the owner's property disclosure, the jury could have found that Ms. Thomas waived her rights under the terms of the real estate contract by purchasing the property "as is" and by failing to inspect. Even excluding the contract and owner's property disclosure, the jury could have found that Ms. Thomas had independent knowledge of the foundation problems. For example, she paid $105,000 for a home that appraised for $145,000, and she testified that she was aware that the reduced price was based in part on the foundation problems. Thomas simply failed to convince the jury that the Olsons were liable under any of the five theories alleged. In short, the jury was presented with five theories of liability, however, the jury determined that Ms. Thomas failed to meet her burden of proof on any of them. Thus, the jury's verdict was supported by substantial evidence, and the circuit court did not err in denying Ms. Thomas' motion for a new trial.

### III. Jury Instructions

Finally, Ms. Thomas asserts that because attorney's fees are an element to her damages under the Arkansas Deceptive Trade Practices Act, the circuit court erred in failing to provide a proffered jury instruction for attorney's fees. She asserted claims of liability under Ark. Code Ann. sections 4-88-107 and 4-88-108 of the Arkansas Deceptive Trade Practices Act. Section 4-88-113(f) of the Act provides that "[a]ny person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appro-

priate, and reasonable attorney's fees." Ark. Code Ann. § 4-88-113(f) (Repl. 2005). She avers that attorney's fees are an element of compensable damages under section 4-88-113(f) even in the absence of recovery of actual damages. To support this notion, she turns to the language of the statute and contends that "[t]hat is why the legislature placed the words 'if appropriate,' following 'actual damages.' "

A trial court's refusal to give a proffered jury instruction will not be reversed absent an abuse of discretion. *FMC Corp., Inv. v. Helton*, 360 Ark. 465, 202 S.W.3d 490 (2005). In addition, when we are asked to examine statutory language, as in the present case, we have noted that we will give effect to the intent of the legislature. *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002). We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning. *Id.* Furthermore, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Burnette v. State,* 354 Ark. 584, 127 S.W.3d 479 (2003).

As previously indicated, Ark. Code Ann. section 4-88-113(f) provides that "[a]ny person *who suffers actual damage or injury* as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees." (Emphasis added.) The plain reading of the statute requires that an award for actual damages or attorney's fees is predicated on prevailing on the claim or claims asserted. The jury rejected Ms. Thomas' claims pursuant to Ark. Code Ann. sections 4-88-107 and 4-88-108, thereby denying her recovery of actual damages or attorney's fees. Consequently, because Ms. Thomas did not prove actual damages or injury, it is not necessary for us to consider whether attorney's fees are a part of an element of damages under Ark. Code Ann. section 4-88-113(f). We conclude that the circuit court did not abuse its discretion for failing to give the proffered jury instruction for attorney's fees.

Affirmed.