ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES, INC. *v.* ADVANCED CONTROL SOLUTIONS, INC.

06-1145                                                          275 S.W.3d 162

Supreme Court of Arkansas
Opinion delivered February 7, 2008

*Ogletree, Deakins, Nash, Smoak & Stewart*, by: *Robert E. Bettac* and *Dawn M. Knepper*; and *Pettus, Pettus, McGuire & Damron Law Firm, P.A.*, by: *E. Lamar Pettus*, for appellant/cross-appellee.

*Conner & Winters, LLP*, by: *Todd P. Lewis*, for appellee/cross-appellant.

ANNABELLE CLINTON IMBER, Justice. This appeal arises from a complaint filed by Appellee/Cross-appellant Advanced Control Solutions, Inc. ("ACS") against Appellant/Cross-appellee Advanced Environmental Recycling Technologies, Inc. ("AERT") and Orin B. Justice. The complaint averred that AERT, a client of ACS, had hired Justice, a former employee of ACS, in violation of a covenant not to compete. The complaint alleged multiple claims against both defendants, and each defendant raised multiple counterclaims against ACS. AERT appeals from the judgment in favor of ACS on ACS's claim of tortious interference with a contract, while ACS cross-appeals from a judgment in favor of AERT on AERT's counterclaim for breach of contract. Justice is not involved in this appeal. Because this case presents a procedural issue needing clarification of the law and interpretation of a rule of civil procedure, it was certified to us by the Arkansas Court of Appeals pursuant to Ark. Sup. Ct. R. 1-2(b)(5) and (6). We find no error and affirm both the direct appeal and the cross-appeal.

ACS is an Arkansas-based professional services firm, with its principal place of business in Bentonville. It specializes in technical programming and design of control systems for industrial facilities and process plants; it also provides technical assistance and electrical control and programming for process automation. Orin Justice was employed at ACS beginning in June of 1998. He began as a part-time employee and obtained full-time status in October of 1998. In 2000, Justice was appointed vice-president of the company by its president, Jeff Call, and was made a five-percent shareholder. Justice specialized in electrical control work and was eventually placed in charge of the electrical control work for ACS's biggest client, AERT, a manufacturer of composite wood products. Testimony showed that Justice spent approximately seventy percent of his time doing electrical control work on the AERT account in 2002 and 2003. Justice was provided with a workspace at AERT's Springdale facility and developed close working relationships with AERT employees.

Justice testified that, on several occasions while he was performing electrical control work for AERT on behalf of ACS, he was offered a job at AERT. He stated that he did not take these offers seriously and considered them to be "in jest" or "in passing." Additionally, Justice had signed an employment agreement, which included a covenant-not-to-compete provision, with ACS. The employment agreement was introduced at trial by ACS.

It was signed by Justice on July 17, 1998, and contained a paragraph titled "Competitive Activities," which read, in pertinent part:

> Employee shall not attempt to solicit Employer's Clients or engage in activities as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity, to directly compete with Employer for a period of twenty-four (24) months within the state of Arkansas after the termination of this Employment Agreement.

The agreement also stated that "[m]odifications of this Agreement will be effective only if in writing and signed by the party to be charged." However, Justice testified at trial that he had not agreed to this covenant-not-to-compete provision. He stated that the first and last pages of the employment agreement introduced by ACS, which contained the date written in by Justice and his signature, were from the agreement that he had signed. However, the pages in the middle, specifically the page containing the non-compete provision, had been replaced since he dated and signed the contract. Justice testified that the word "employee" (as part of the phrase, "engage in activities as an *employee*, employer, consultant") had been struck through on the version that he had signed. According to Justice, he had been given a copy of the contract when he signed it but was unable to locate it.

Justice did introduce at trial an unsigned copy of the agreement he claimed to have signed. In that version, the word "employee," as well as the phrase "or in any other individual or representative capacity," were crossed out. This copy also contained handwritten notations by Justice. He testified that, prior to his signing the contract, he and Jeff Call discussed these notations and included some of the suggested changes in the final version. Justice also testified that the final version of the contract he signed included a provision stating that he could terminate the agreement at any time and for any reason if he gave five days' notice to Call. According to Justice, he did not agree to the replacement of pages of the contract, which effectively removed the strikeouts and the provision giving Justice the right to terminate the agreement. Justice stated that he was not aware that these changes were made and did not receive anything in exchange for the modification of the agreement.

However, Call testified that he and Justice made these changes together. According to Call, he and Justice realized that the strike-through of the word "employee" in their employment

agreements was a problem when another employee, who had signed an employment agreement with the strike-through, went to work for a company with which ACS had negotiated a purchase order. Consequently, Call and Justice together reviewed all of the employment agreements on file. They found that Justice's was the only other one with the strike-through. They then replaced the page containing the strike-through so that the non-compete provision included the word "employee" and the phrase "or in any other individual or representative capacity."

While Justice was still employed at ACS, his daughter was also hired to work for the company. In December of 2003, she was asked to sign an employment agreement with the non-compete provision. Upon her refusal to sign the agreement, Justice's daughter was terminated by Call. Justice then informed Call that, because he believed his daughter's termination to be wrongful, he planned to advise her to hire an attorney. Call then terminated Justice's employment as well. On the same day, Justice spoke with James Kelly Schmidt at AERT, who asked Justice to come in for a meeting regarding the possibility of his working for AERT. Justice met with the president, senior vice-president, and operations manager of AERT on December 10 and signed an employment contract on December 23. At the time of trial, Justice remained employed at AERT. As project manager for process controls, he performs the same type of work that he had performed on behalf of ACS. Justice also selects contractors to perform work at AERT. Since Justice began work at AERT on January 2, 2004, ACS has not performed any electrical control work for AERT. Multiple projects have been given instead to Hyme Automation and Fayetteville Electric, neither of which had done work for AERT prior to Justice's employment there. Justice actually formed and incorporated Fayetteville Electric but later transferred his interest in that company because he perceived the situation as a conflict of interest.

ACS's complaint against Justice alleged breach of covenant not to compete and civil conspiracy, violation of the Arkansas Trade Secrets Act, tortious interference with a contract, tortious interference with prospective economic advantage, and tortious interference with contractual and business relationships with clients. As to its claims against AERT, ACS alleged tortious interference with a contract and civil conspiracy, breach of contract, and conversion (stemming from AERT's alleged refusal to return ACS property that had been stored at AERT's facility). Justice

filed a counterclaim against ACS, alleging violation of dissenter's rights and breach of employment contract and requesting a declaratory judgment proclaiming that the covenant not to compete was invalid and unenforceable. AERT also filed a counterclaim against ACS, alleging breach of contract and conversion and requesting specific performance and a mandatory injunction. AERT averred that, in 2003, it contracted with ACS for ACS to design, install, and make operational an automated inventory tracking system. ACS allegedly agreed to provide AERT with all information needed to access the program, known as "source codes." AERT asserted that, after ACS made the program operational, it refused to release the source codes.

The circuit court granted ACS's motion to dismiss without prejudice its claim against Justice for violation of the Arkansas Trade Secrets Act as well as its motion to dismiss with prejudice its breach-of-contract claim against AERT. All other claims were disposed of by a Benton County jury. Judgment was entered in favor of ACS and against Justice for breach of covenant not to compete, tortious interference with prospective economic advantage, and tortious interference with contractual and business relationships with clients. Judgment was also entered in favor of ACS and against AERT for tortious interference with a contract and conversion. On the counterclaims, judgment was entered in favor of ACS on Justice's claims of violation of dissenter's rights and breach of employment contract. Finally, AERT prevailed on its breach-of-contract counterclaim against ACS; however, ACS prevailed on AERT's counterclaim for conversion. AERT now appeals the judgment in favor of ACS on ACS's claim for tortious interference with a contract, and ACS appeals the judgment in favor of AERT on AERT's counterclaim for breach of contract. The parties filed timely notices of appeal and of cross-appeal.

### Final, Appealable Order

In its certification of this case to our court pursuant to Ark. Sup. Ct. R. 1-2(d), the Arkansas Court of Appeals raised a threshold question: did the circuit court's judgment disposing of these claims constitute a final, appealable order? Because finality presents a jurisdictional issue, it is a matter we will consider even though the parties do not raise it. *Haile v. Arkansas Power & Light Co.*, 322 Ark. 29, 907 S.W.2d 122 (1995). An answer to this question will require a review of our prior case law on the subject.

Rule 2 of the Arkansas Rules of Appellate Procedure – Civil requires that a judgment or decree be final in order for it to be appealable, with limited exceptions. The purpose of this rule is to avoid piecemeal litigation. *Lamb v. JFM, Inc.*, 311 Ark. 89, 842 S.W.2d 10 (1992). In *Ratzlaff v. Franz Foods of Arkansas*, 255 Ark. 373, 500 S.W.2d 379 (1973), this court was presented with an occasion to interpret Rule 2 with regard to a specific issue. The question at issue was "whether a plaintiff, by taking a voluntary nonsuit with respect to two counts in his complaint, can thereby convert an adverse partial summary judgment with respect to a third count into an appealable order." *Id.* at 374, 500 S.W.2d at 379. In *Ratzlaff*, seven complaints, consolidated on appeal, alleged three causes of action: breach of contract, wrongful discharge of waste into a stream, and violation of a city ordinance. *Id.* On the defendant's motion, the circuit court entered partial summary judgments, striking the violation-of-city-ordinance count from each complaint. *Id.* The plaintiffs took voluntary nonsuits with respect to the two remaining counts and appealed from the partial summary judgments. *Id.* This court dismissed the appeals because the order was not final and noted our long-established policy of disallowing piecemeal appeals. *Id.* We stated: "Here the appellants seek to circumvent the policy of the statute by holding two counts of their complaints in abeyance while they seek our opinion upon the validity of a third count. If that procedure is permissible, litigants may appeal from various interlocutory orders by taking a nonsuit with respect to the rest of the case." *Id.* at 375, 500 S.W.2d at 380.

We reached the same result in a similar case, *Haile v. Arkansas Power & Light Co.*, *supra*. There, the plaintiffs alleged negligence and strict product liability. *Id.* The circuit court granted the defendant's motion for summary judgment with respect to the product-liability claim and denied the defendant's motion for summary judgment with respect to the negligence claim. *Id.* However, the court noted that the plaintiffs could not recover for damages suffered prior to a specified date, pursuant to the applicable statute of limitations. *Id.* When the plaintiffs' motion for reconsideration was denied, they nonsuited the negligence claim and appealed the grant of summary judgment with respect to the product-liability claim. *Id.* This court cited *Ratzlaff* and dismissed the appeal as an unauthorized interlocutory appeal. *Id.* We noted that, pursuant to Ark. R. Civ. P. 41(a), a voluntary nonsuit or dismissal leaves a plaintiff free to refile a claim, assuming there has

been no previous dismissal. *Id.* Because the plaintiffs could have refiled their negligence claim, there was a distinct possibility of piecemeal appeals. *Id.*

Although both *Haile* and *Ratzlaff* involved appeals from orders granting summary judgment, the Arkansas Court of Appeals has applied the same rationale to appeals from jury verdicts. *Pro Transp., Inc. v. Volvo Trucks North America, Inc.*, 96 Ark. App. 166, 239 S.W.3d 537 (2006). In *Pro Transportation*, the plaintiff nonsuited two of its claims against the defendants and then went to trial on the remaining claims. *Id.* After the jury returned a verdict and the court entered judgment in favor of the defendants, the plaintiff appealed. *Id.* The court of appeals dismissed the appeal, citing *Haile* and *Ratzlaff* and stating that "there is no logical reason why the same reasoning should not apply in this situation where the case has been tried and certain claims nonsuited prior to submission to the jury." *Id.* at 168, 239 S.W.3d at 539. We agree with this rationale.

Our court has limited the application of *Haile* and *Ratzlaff* and held that their rationale does not apply when the nonsuit is with respect to one of several parties, rather than one of several claims. *Driggers v. Locke*, 323 Ark. 63, 913 S.W.2d 269 (1996). In *Driggers*, the plaintiff sued for damages sustained in an automobile accident. *Id.* He sued the driver of the other vehicle in addition to a couple whose property near the intersection where the accident took place contained overgrown plants that allegedly impeded the view of drivers. *Id.* The circuit court granted summary judgment in favor of the property owners. *Id.* Because he was unable to serve the other driver, the plaintiff took a voluntary nonsuit of his claim against that defendant. *Id.* We distinguished this situation from that presented in *Haile* and *Ratzlaff*, noting that a plaintiff is generally not required to sue multiple defendants simultaneously. *Id.* Conversely, in the situation of a plaintiff who has multiple claims against a party, the doctrine of *res judicata* will operate to bar claims that could have been litigated between them but were not. *Id.* In other words, "[i]f Mr. Driggers had sued the Lockes and not joined Buddy Neal, the summary judgment in favor of the Lockes would have unquestionably been a final, appealable order, and he could have sued Buddy Neal later. The fact that he began an action against Buddy Neal and then took a nonsuit leaves the parties in the same positions as they would have occupied had the claim against Buddy Neal merely been delayed rather than nonsuited." *Id.* at 66-67, 913 S.W.2d at 270. More recently, in a medical-

malpractice action we applied the rule in *Driggers* to conclude that a summary-judgment order dismissing the hospital and its insurer was final and appealable after the plaintiff voluntarily nonsuited the remaining defendants. *Winkler v. Bethell*, 362 Ark. 614, 210 S.W.3d 117 (2005).

The *Driggers* distinction was noted but not applied in our decision in *Mountain Pure LLC v. Affiliated Foods Southwest, Inc.*, 366 Ark. 62, 233 S.W.3d 609 (2006). The procedural posture of *Mountain Pure* included elements common to both the *Haile/Ratzlaff* situation and the *Driggers* situation. *Id. Mountain Pure* involved multiple claims against one defendant, as in *Haile* and *Ratzlaff*, but also involved multiple defendants, as in *Driggers*. *Id.* We noted that a nonsuit can create finality if it is to one of several parties but concluded that the situation more closely resembled *Haile* and *Ratzlaff*, because there were claims against each defendant/appellee that had been resolved by nonsuit and by summary judgment. *Id.* The plaintiff/appellant took voluntary nonsuits against each defendant and also appealed summary judgments granted in favor of each defendant. *Id.* Therefore, the order was not final, and the appeal was impermissibly interlocutory. *Id.*

The procedural situation presented in the instant appeal is a hybrid of the situations dealt with in *Haile*, *Ratzlaff*, *Driggers*, and *Mountain Pure*. We must determine which rationale is most appropriate when the case involves multiple claims as well as multiple parties, and when the plaintiff has taken a voluntary nonsuit against one defendant and now appeals an adverse judgment as to a different defendant.

We find the present situation to be a natural extension of the *Driggers* rationale. It is true that ACS has nonsuited one claim and appealed an adverse judgment as to another; however, Justice, the party against which ACS obtained a nonsuit, is not involved in this appeal. ACS did not seek a dismissal without prejudice of any of its claims against AERT, the only defendant against which ACS has appealed. Thus, this litigation may very well result in two appeals, if ACS later refiles its nonsuited claim against Justice. However, one appeal will resolve the claims between ACS and AERT, while the other will resolve the claims between ACS and Justice. Such a result will not split any cause of action. *See* 2 David Newbern & John J. Watkins, *Arkansas Practice Series: Civil Practice & Procedure* § 40.3, at 737 (4th ed. 2006 & Supp. 2007) (*citing State Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 11 n. 1, 59 S.W.3d 438, 441 n. 1 (2001)).

As we noted in *Driggers*, nothing requires a plaintiff to sue defendants simultaneously. *Driggers v. Locke, supra.* A nonsuit as to one of multiple parties leaves the parties in the same positions they would have been in had the defendants been sued separately: the claims against one defendant may proceed, while the claims against the other may be raised at a later time. *Id.* In the present situation, the parties are, at this point, in the same positions in which they would have been had AERT and Justice been sued separately. ACS and AERT can now resolve their claims against one another on this direct appeal and cross-appeal. ACS and Justice can resolve their claims later, if and when ACS refiles its nonsuited claim against Justice.[1] For these reasons, we hold that the judgment entered by the circuit court constituted a final, appealable order as to the claims between ACS and AERT. This appeal is properly before us.

## Direct Appeal

On appeal, AERT argues that the evidence was insufficient to support a liability finding on ACS's tortious-interference-with-a-contract claim. AERT advances several arguments in support of its position, but most are not properly preserved for our review. According to Rule 50(e) of the Arkansas Rules of Civil Procedure, "[w]here there has been a trial by jury, the failure of a party to move for a directed verdict at the conclusion of all the evidence, because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict." Rule 50(a) requires that a motion for directed verdict "state the specific grounds therefor." Ark. R. Civ. P. 50(a). This court has stated that requiring specific grounds in a directed-verdict motion is especially necessary when a case involves multiple issues, as this case does. *Thomas v. Olson*, 364 Ark. 444, 220 S.W.3d 627 (2005). In any event, this court will not take up issues raised for the first time on appeal. *Watt v. Office of Child Support Enforcement*, 364 Ark. 236, 217 S.W.3d 785 (2005). A motion for judgment notwithstanding the verdict is technically only a renewal of the motion for directed verdict made at the close of the evidence; therefore, it cannot assert a ground not included in the directed-verdict motion. *Thomas v. Olson, supra.* Thus, any

---

[1] As to the claims between ACS and Justice, we do not address the issue of whether the circuit court's judgment constituted a final, appealable order.

arguments made in AERT's motion for judgment notwithstanding the verdict that were not made in its motion for directed verdict may not be taken up on appeal. The arguments made in the directed-verdict motion are controlling.

The record reveals that, after the close of ACS's evidence, Justice moved for a directed verdict by submitting a written motion to the court. Counsel for AERT then stated: "AERT would also move for a directed verdict, in much the same manner as Defendant Justice has on the breach of the covenant not to compete, and more specifically to AERT, the tortious interference with the contract, along the same lines as what [counsel for Justice] has shown here." Counsel for AERT then elaborated, naming the three requirements for valid non-compete agreements and stating that there was no evidence to support the first requirement (that there be a valid interest protected by the agreement) because it had not been shown that Justice was provided special training, that he had made confidential business information available, or that he was able to use information obtained to gain an unfair competitive advantage. Counsel then discussed the issue of the validity of the geographical restriction. After response from ACS's counsel, counsel for AERT added that the law does not protect parties against ordinary competition and noted that Justice is not competing against ACS for customers. Both Justice's and AERT's motions for directed verdict were denied. Upon renewal of its directed-verdict motion, AERT did not offer any additional arguments.

AERT filed a motion for certified supplement to the record after it noticed that several items had been omitted from the record. One of the missing items was Justice's written motion for directed verdict. The circuit court declined to supplement the record with the motion, noting that it had not been entered as an exhibit, filed with the clerk, or filed with the court. At a hearing on the motion for certified supplement to the record, AERT proffered the motion; however, it was not made a part of the record. AERT now appeals that decision.

■ We find no error. The standard for correction or modification of the record is set forth in Ark. R. App. P.–Civil 6(e): "If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the circuit court before the record is transmitted to the appellate court, or the appellate court on motion, or on its own initiative, may direct that the omission or misstatement shall be corrected, and if necessary, that a supplemental record be certified

and transmitted." AERT has not shown that the omission was due to error or accident. The record should only be corrected when it does not "truly disclose[] what occurred in the circuit court[.]" Ark. R. App. P.–Civil 6(e). The record should be "made to conform to the truth." *Id*. The record as it stands now, without Justice's written directed–verdict motion, conforms to the truth of what occurred below, because the motion was never introduced as an exhibit, filed with the clerk, or filed with the court. It may have been error on the part of counsel for AERT or for Justice to neglect to ensure that the motion was properly filed; however, the exclusion of the motion from the record itself was not error or accident, as it was never properly made part of the record. Therefore, the arguments presented in the written motion were not preserved for our review.

Only one of AERT's many arguments is properly before us: that there was no valid contract with which AERT could have interfered, because the geographic scope of the non–compete provision was overly broad. Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Crawford County v. Jones*, 365 Ark. 585, 232 S.W.3d 433 (2006). Similarly, in reviewing the denial of a motion for judgment notwithstanding the verdict, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. *Id*. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id*. It is not this court's place to try issues of fact; rather, this court simply reviews the record for substantial evidence to support the jury's verdict. *Id*. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id*.

A *prima facie* establishment of tortious interference with a contract requires the existence of a valid contractual relationship. *Walt Bennett Ford, Inc. v. Pulaski County Special Sch. Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981). In order for a non–compete agreement to be valid, three requirements must be met: 1) the covenantee must have a valid interest to protect; 2) the geographical restriction must not be overly broad; 3) a reasonable time limit must be imposed. *Jaraki v. Cardiology Assocs. of Northeast Arkansas, P.A.*, 75 Ark. App. 198, 55 S.W.3d 799 (2001). Whether a restraint provision is reasonable or unreasonable is a question to be

determined under the facts of each case. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999). The party challenging the validity of a covenant must show that it is unreasonable and contrary to public policy. *Id.* Findings of fact will not be reversed unless clearly erroneous. *Id.*

■ We hold that substantial evidence exists to support the jury's determination that the geographic restriction in Justice's covenant not to compete was reasonable. Although Call testified that ACS does not perform work in the majority of Arkansas communities, he also stated that ACS performs work "throughout the state." Call named El Dorado, Osceola, and Harrison as examples of communities in which ACS performs work. The jury was free to believe Call's testimony and to infer that restricting Justice from performing competitive activities within the state of Arkansas was reasonably necessary to protect the interests of ACS. Therefore, we affirm the jury's determination on this point as well as the finding of liability against AERT for tortious interference with a contract.[2]

*Cross-Appeal*

On its cross-appeal of the judgment in favor of AERT on AERT's counterclaim for breach of contract, ACS claims that AERT failed to prove damages. ACS notes that the jury awarded AERT $45,562.50, plus attorney's fees, despite the fact that a witness for AERT testified that $45,562.50 was the amount paid to ACS for both the inventory tracking system program applications and the source codes. Because the inventory tracking system had been installed and was operating properly, ACS contends that the measure of damages for the failure to provide the source codes should have been the difference between the purchase price of the system ($45,562.50) and the fair market value of the source codes.

---

[2] AERT also appeals the circuit court's refusal to submit an estoppel-defense instruction to the jury, but, like the balance of AERT's points, this argument is not preserved. AERT failed to state the specific grounds for its objection at trial. According to Ark. R. Civ. P. 51, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection[.]" Furthermore, "[a] more general objection shall not be sufficient to obtain appellate review of the court's action relating to instructions to the jury[.]" Ark. R. Civ. P. 51.

AERT offered no evidence of the fair market value of the source codes, which, according to ACS, meant that the jury had to engage in speculation.

■ However, as AERT points out, the jury was free to conclude that the refusal to relinquish the source codes made the inventory tracking system wholly unworkable and therefore worthless. Testimony established that the inventory tracking system could be used without the source codes but that it could not be updated or modified. Thus, the jury could have inferred that, over time, the system would become worthless. We cannot say that an award of damages in the amount of $45,562.50 is not supported by substantial evidence.

ACS also claims that the circuit court abused its discretion in admitting a document prepared and relied upon by Al Drinkwater of AERT in his testimony regarding the measure of damages sustained by virtue of the breach of contract. ACS objected to the admission of the document because it had not been given an opportunity to review the document before trial, as it was created by Drinkwater on the night before it was presented at trial. According to ACS, this severely prejudiced its ability to prepare for Drinkwater's testimony. In discussing our standard of review for evidentiary rulings, we have said that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Yeakley v. Doss*, 370 Ark. 122, 257 S.W.3d 895 (2007).

■ A review of the record reveals that other evidence supported the damages award, namely, the testimony of Anthony Olinde of ACS regarding the hours he spent in creating the source codes and further testimony of Drinkwater, which did not rely on the document at issue. Pursuant to our harmless-error rules, we are to exercise judgment in preference to automatic reversal for nonprejudicial error. *See Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984). We are to ignore errors that do not affect the essential fairness of a trial. *Id.* In accordance with these principles, we cannot conclude that the circuit court abused its discretion in admitting this document. In light of the other evidence presented on the topic of damages, the admission of this document would have only reiterated other testimony. Therefore, we affirm the circuit court's ruling on this point.

Affirmed on direct appeal, affirmed on cross-appeal.