2013 Ark.App. 305

**Sally L. THOMAS, Appellant**

v.

**Nadav SHARON, M.D., and Ozarks Regions Health Systems, Inc. d/b/a St. John's Hospital—Berryville, Appellees.**

**No. CA 12–231.**

Court of Appeals of Arkansas.

May 8, 2013.

Rehearing Denied June 26, 2013.

Taylor Law Partners, LLP, Fayetteville, by: Timothy L. Brooks, for appellant.

Cox, Cox & Estes, PLLC, Fayetteville, by: Walter B. Cox, for appellee Nadav Sharon.

Bassett Law Firm, LLP, Fayetteville, by: Walker Dale Garrett, for appellee Ozarks Regions Health Systems, Inc.

BILL H. WALMSLEY, Judge.

Appellant Sally Thomas appeals from the Carroll County Circuit Court's denial of her motion for new trial following a jury's verdict finding that she sustained no damages that were proximately caused by the stipulated negligence of appellees, Nadav Sharon, M.D., and Ozarks Regions Health Systems, Inc. d/b/a St. John's Hospital—Berryville. Thomas argues on appeal that the presence of a retained surgical clamp in her abdomen unquestionably resulted in damages. We affirm.

Thomas suffered from chronic diverticulitis. On September 23, 2005, Dr. Sharon removed the sigmoid portion of Thomas's colon and performed an anastomosis. When Thomas subsequently had a bowel movement, she described that it felt "like my whole insides had ripped apart." A CT scan confirmed that there was a leak at the reconnection site, along with a large pelvic abscess. Thomas underwent a second surgery by Dr. Sharon on October 3, 2005, to repair the breakdown of the anastomosis, during which Dr. Sharon removed a necrotic section of her colon and performed a colostomy. Thomas's health, however, rapidly declined following the second surgery, and on October 5, 2005, Dr. Sharon, because he was concerned that Thomas was developing respiratory-distress syndrome, ordered that she be transferred to St. John's Hospital in Springfield, Missouri. In Springfield, Thomas exhibited symptoms of infection, and a CT scan was obtained on October 8, 2005. The CT scan revealed a six-inch Kelly clamp retained inside Thomas's abdomen. Dr. Cameron Hodges reopened Thomas's incision to remove the clamp and discovered infection that required debridement. Thomas was on a ventilator for one week and went home with a wound vac. Thereafter, Dr. Hodges performed another surgery to take down the colostomy. Over the next several years, Thomas experienced complications, including hernias and additional infections. Thomas underwent a total of eight surgeries due to abdominal-wall infections resulting from the pelvic abscess that formed after the first surgery.

Thomas sued both Dr. Sharon and St. John's Hospital in Berryville in connection with the second surgery performed on October 3, 2005.[1] Prior to trial, appellees stipulated that their failure to remove the surgical clamp constituted negligence. The amended stipulation provided in part

[t]hat although the defendants deny that the presence of the retained surgical clamp proximately caused any injuries or damages to Sally Thomas, the defendants stipulate that Dr. Sharon and St. John's Hospital—Berryville are each responsible and liable for whatever injuries and damages, if any, the jury finds were proximately caused by the presence of the retained surgical clamp from the surgery performed on October 3, 2005.

Thomas's expert, Dr. Samuel Feinberg, a general surgeon, acknowledged that Dr. Hodges reported that he specifically checked to ensure there were no injuries resulting from the retained clamp and that Dr. Hodges found there were no such injuries. Dr. Feinberg also agreed that the retained surgical clamp did not cause the anastomotic leak, the infections or pelvic abscess, any apparent injury to Thomas's organs, tissue, or vessels, the ischemia or necrotic dead tissue, the need to put her on a ventilator, the need for wound-vac care, and did not cause any delay in wound healing. Dr. Feinberg opined that the marked inflammatory reaction from the breakdown of the anastomosis performed on September 23, 2005, led to Thomas's chronic pain and increased risk of subsequent hernia formation. Dr. Feinberg further testified that, more likely than not, Thomas's infections were the chief source of her ventral-incision hernias. Although Dr. Feinberg opined that the retained clamp resulted in excruciating pain for Thomas, he acknowledged that having two colon resections within ten days of each other and the development of a pelvic abscess, peritonitis, and necrotic muscle likewise would be painful. According to Dr.

---

1. Thomas brought suit against only Dr. Sharon with respect to the first surgery. The jury found in favor of Dr. Sharon, and Thomas did not appeal from that verdict.

Feinberg, the chief damage suffered by Thomas was the required surgery to remove the retained clamp, but he admitted that Thomas needed wound care and debridement in connection with the third surgery. Dr. Feinberg testified that Thomas additionally sustained damages in that she was transferred to Springfield and had a CT scan that "confirmed the diagnosis that the clamp was in place."

According to defense expert Dr. Ray Stahl, a general surgeon, Thomas had the third surgery to remove the retained clamp, but she would have needed that third surgery anyway to clear the infection that was present. Dr. Stahl referred to it as "medical serendipity" that the removal of the clamp led to the early detection of infection that required treatment. Also, Dr. Stahl testified that doctors in Springfield obtained a CT scan due to suspected infection, not the presence of a retained clamp. Dr. Diane Rhoden, a faculty surgeon at UAMS, testified that, while she did not know whether a steel foreign instrument left in the abdomen would cause any increased pain, she would expect a patient who had undergone two surgeries in a ten-day period and was diagnosed with peritonitis to suffer pain. Dr. William Flake, who assisted Dr. Sharon with the first and second surgeries, testified that the retained clamp "could have" rubbed against various anatomical structures and produced pain but that he did not believe the clamp caused any harm to Thomas. Likewise, Dr. Sharon testified that he did not believe the clamp caused any measurable pain or discomfort because it had been there for four days before being discovered, yet there was no local reaction, such as inflammation.

Thomas testified that she was in some pain following the first surgery but that the pain was "one hundred times worse"

after the second surgery and more painful than childbirth. A medical-expenses summary was introduced into evidence, and Thomas testified that she believed that all of the $392,000 she incurred in medical expenses was the result of appellees' negligence.

The jury was instructed that Thomas had the burden of proving her case by a preponderance of the evidence. The instruction read, in part, that "[i]f, upon any issue in the case, the evidence appears to be equally balanced, or if you cannot say upon which side it weighs heavier, you must resolve that question against the party who has the burden of proving it." With respect to the retained clamp, the jury was instructed that appellees were liable for any damages sustained by Thomas that were proximately caused by their negligence. "Proximate cause" was defined as "a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred. This does not mean that the law recognizes only one proximate cause of damage. To the contrary, if two or more causes work together to produce damage, then you may find that each of them was a proximate cause." The trial court agreed to submit interrogatories prepared by Thomas's counsel. The jury was asked whether it found by a preponderance of the evidence that negligence on the part of each appellee was a proximate cause of any of Thomas's injuries, to which the jury answered "no."

Thomas moved for a new trial pursuant to Arkansas Rule of Civil Procedure 59(a)(6), which provides that a new trial may be granted where the verdict or decision is clearly contrary to the preponderance of the evidence or contrary to the law.[2] The trial court denied the motion, and Thomas filed a timely notice of appeal.

2. Thomas did not move pursuant to Ark. R.   Civ. P. 59(a)(5), which provides for a new

When a motion for new trial is made on the ground that the verdict is clearly contrary to the preponderance of the evidence, this court will affirm the denial of the motion if the jury's verdict is supported by substantial evidence. *Blake v. Shellstrom*, 2012 Ark. App. 28, 388 S.W.3d 57. Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture. *Webb v. Bouton*, 350 Ark. 254, 85 S.W.3d 885 (2002). In determining the existence of substantial evidence, we view the evidence in the light most favorable to the party on whose behalf the judgment was entered and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Id.*

Generally, a defense verdict will always be supported by substantial evidence because the plaintiff has the burden of proof, and the jury is the sole judge of credibility of witnesses and the weight and value of the evidence. *Chapman v. Ford Motor Co.*, 368 Ark. 328, 245 S.W.3d 123 (2006). No matter how strong the evidence of a party, who has the burden of establishing negligence and proximate cause as facts, may comparatively seem to be, he is not entitled to have those facts declared to have reality as a matter of law, unless there is utterly no rational basis in the situation, testimonially, circumstantially, or inferentially, for a jury to believe otherwise. *Id.*

On appeal, Thomas argues that she should have been compensated for having a six-inch piece of steel inside her body for five days and subsequently being forced to undergo surgery to remove it. According to Thomas, appellees' admission that the third surgery was necessary to remove the retained clamp amounted to proof that appellees' negligence was a proximate cause of at least some of her damages. Thomas argues that fair-minded people could not determine that no medical expenses were associated with removal of the clamp and that the jury must have been confused by the instructions or simply ignored them. Thomas also argues that the evidence showed that she suffered pain and mental anguish in connection with the second surgery and that the retained clamp caused the excruciating pain she experienced during the ambulance ride to Springfield.

In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving by means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred. Ark.Code Ann. § 16–114–206(a)(3) (Repl.2006). A jury is not bound to accept opinion testimony of experts as conclusive or to believe the testimony of experts any more than the testimony of other witnesses; the jury alone determines the weight to be given the evidence, and it may accept or reject all or any part of it that its members believe to be true. *Montgomery v. Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992). Although a defendant may be shown to have been negligent, the plaintiff must also prove that she suffered damages as a result of that negligence. *Fritz v. Baptist Mem'l Health Care Corp.*, 92 Ark.App. 181, 211 S.W.3d 593 (2005).

trial on the ground of error in the assessment of the amount of recovery, whether too large or too small.

Causation is ordinarily a question of fact for the jury to decide. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999). The law requires more than a mere possibility that certain injuries resulted from negligence; rather, a reasonable probability must be established. *Id.* Therefore, a plaintiff's proof of causation must be more than speculation or conjecture. *Id.* It must be such that reasonable persons might conclude that it is more probable than not that an event was caused by the defendant. *Id.* In an action for negligence, proximate cause may be shown from circumstantial evidence, and such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred. *Id.*

Although appellees stipulated that they were negligent with regard to the retained surgical clamp, the jury concluded that Thomas failed to prove that she sustained any damages as a result of the negligence. In reaching its verdict, the jury could have relied on defense experts who testified that there was no apparent internal damage resulting from the retained clamp, that Thomas was transferred to Springfield due to concerns over respiratory function, that she had a CT scan because doctors suspected infection, and that Thomas would have needed the third surgery, even if the clamp had not been present, in order to clear the infection that resulted from the first surgery.

Further, the jury could have found that Thomas's complaints of pain were exaggerated or that the pain she experienced was due to having had consecutive abdominal surgeries in a short period of time, along with the development of a pelvic abscess and peritonitis. There was evidence that diverticulitis is a painful condition and that an anastomosis is a very painful surgery.

Also, Thomas's own expert, Dr. Feinberg, reported that Thomas's chronic pain was the result of inflammation and infection following the first surgery and the breakdown of the anastomosis.

The jury was the sole judge of credibility and weight to be given to the testimony. Thomas had the burden of proving that appellees' negligence was a proximate cause of the damages she alleged to have sustained. Even though negligence with regard to the retained surgical clamp was admitted by appellees, Thomas still had to prove that their negligence was a proximate cause of her damages. The jury determined that Thomas failed to carry her burden of proof.

While this court may not have reached the same verdict, our standard of review does not permit us to substitute our judgment for that of the jury. Viewing the evidence in the light most favorable to appellees, we hold that there was substantial evidence to support the jury's verdict. Thus, the trial court did not err in denying Thomas's motion for new trial, and we must affirm.

Affirmed.

GLOVER, J., agrees.

WHITEAKER, J., concurs.

PHILLIP T. WHITEAKER, Judge, concurring.

I concur in the majority's analysis. I write separately solely to emphasize that the jury verdict was supported by the evidence and was determined by the manner in which the evidence was presented to the jury.

The facts can be boiled down to the following: Ms. Thomas suffered from chronic diverticulitis. In September 2005, Dr. Sharon removed the sigmoid portion of her colon and performed an anastomosis

(Surgery # 1). When the anastomosis failed, Dr. Sharon performed a second surgery to repair the damage (Surgery # 2). During Surgery # 2, Dr. Sharon failed to remove a six-inch surgical clamp from Thomas's abdomen. Surgery # 2 was performed at St. John's Hospital—Berryville. When Thomas began to manifest symptoms of respiratory distress, Thomas was transferred to a hospital in Springfield, Missouri. A CT scan was subsequently performed, which revealed the retained clamp. A third surgery was performed to remove the clamp. During that surgery, infection unrelated to the retained clamp was discovered. That infection would have eventually resulted in the third surgery, even if the clamp had not been mistakenly retained during Surgery # 2.

Ms. Thomas subsequently filed suit against two parties. First, she alleged that Dr. Sharon was negligent in performing Surgery # 1, which resulted in the failed anastomosis, and that he negligently failed to remove the surgical clamp during Surgery # 2.[1] Dr. Sharon denied negligence for his performance in Surgery # 1, but stipulated that he was negligent in failing to remove the surgical clamp in Surgery # 2. However, he denied that his admitted negligence in Surgery # 2 was the proximate cause of Ms. Thomas's injuries. Ms. Thomas also sued St. John's Hospital—Berryville, the facility where Surgery # 2 was performed. Like Dr. Sharon, the hospital stipulated to negligence in Surgery # 2, but denied that this negligence was the proximate cause of any of Ms. Thomas's damages.

At trial, Ms. Thomas's expert testified that Dr. Sharon was negligent in performing Surgery # 1 and that the negligence in Surgery # 1 and Surgery # 2 combined to cause Ms. Thomas's damages. Thomas had the burden of proof on her damages. Thomas failed to differentiate the damages from each respective surgery for the jury. Rather, the damages were lumped together without clearly identifying for the jury which damages were caused by the alleged negligence in Surgery # 1 or the stipulated negligence in Surgery # 2. Then, when the trial court instructed the jury at the close of the case, the instructions also did not separate the two surgeries as separate causes of action.[2] Rather, the jury was simply instructed that Thomas had the burden of proving that she had sustained damages; that Dr. Sharon and St. John's Hospital (or one of them) was negligent; and that such negligence was the proximate cause of Thomas's damages. Thus, the jury was allowed to find that Thomas failed to meet her burden of proving that she suffered any damages related to Surgery # 2. And, given our deference to jury verdicts, especially the deference given to verdicts for the defense,[3] the majority properly concludes that the jury verdict was supportable.

---

1. Thomas does not appeal the jury's finding of negligence from Surgery # 1.

2. The jury instruction referenced here was proffered by Thomas.

3. *See Thomas v. Olson,* 364 Ark. 444, 220 S.W.3d 627 (2005) (stating that, generally, a defense verdict will almost always be supported by substantial evidence, because the plaintiff has the burden of proof, and the jury is the sole judge of credibility of witnesses and the weight and value of the evidence).